We're going to move now to Appeal 23-2224, United States v. Plancarte, and Mr. Velicides. Thank you. We'll begin with you. May it please the Court. The appellant in this case wins because the sniff in this case was a search. Let me ask you a follow-up on that. I apologize for jumping in so quickly. Please. Is the defense not arguing that the police did not have probable cause to search regardless of the sniff? We are not addressing probable cause. It's just not an issue on appeal. What we are arguing is that at the time of the sniff, and we all agree that the sniff is what would have created probable cause, but at the time of the sniff, that the sniff was a search. Thank you. You may continue. Thank you, Your Honor. And that conclusion is compelled by three key factors. One, the drug-sniffing canine in this case would alert to CBD. Two, a drug-sniffing canine is a police device not in general public use that can reveal otherwise private information. And three, that people have a reasonable expectation of privacy in the possession of CBD. Those three factors, combined with long-standing Fourth Amendment case law, compel the conclusion that the sniff itself here was a search. That Fourth Amendment case law presents itself in two layers that are important to this case. First, the general and broader rule that when the police use a device not in general public use to reveal the contents otherwise private of a constitutionally protected space, that that is generally a search. This Court has recognized appropriately that drug-sniffing canines fit that bill. And so generally speaking, those would be a search. They're not, typically, because of the second layer of case law, which carves out an exception for canines from that broader rule. And that exception for canines is premised on the Supreme Court's distillation, and it's been repeated by this Court, of a canine that reveals only things in which no one has a reasonable expectation of privacy. For a drug-sniffing canine, that means a canine that reveals controlled substances. The canine in this case cannot fit that standard. The canine in this case does not reveal only controlled substances. It reveals legal, non-controlled CBD. People have a reasonable expectation of privacy. But counsel, even if you have an expectation of privacy in the exercise of a particular activity, we're talking about a place here, and that place is the air outside the car. Am I missing something there? I think so. So under that reasoning, a canine sniff could never be a search in a public place, right? So in place, the foundational case in Cabayas, the more recent Supreme Court case, those took place in a public place. In other words, the particles emanated out of either a suitcase or a car, and they were captured by a dog in a public place. And so it's just not true that we don't have a right of privacy in the space just because something is revealed by particles emanating out, or in the case of Kylo, which I relied on, in the case of infrared rays emanating out of the house. To decide the case on that basis would return to kind of pre-CATS principles. We have a reasonable expectation of privacy, and it doesn't rely on a physical trespass.  CBD is a really commonly possessed substance. I cite statistics in the brief, but it's used more than cigarettes. It's relied on by people, yes, for massage oils and things like that, but it's also used for anxiety, for certain seizure disorders. This is something that people have a right to possess and a right to prevent the government from knowing about unless the government has cause. And that is what leads to the conclusion that we do have a reasonable expectation of privacy in the possession of CBD. That's what triggers that, and then what separates it from every prior canine case where the courts have said the canine isn't revealing anything in which the person had a reasonable expectation of privacy. It's just not true here. I would encourage the court to try to apply the theory and reasoning proposed by the government to other situations, whether it's cigarettes or other legal items. What is the distinction? Because I don't see one. Under the government's reasoning, this court would be permitting a canine that alerted to any number of legal items, non-controlled substances. And so I think that's how the court can test each competing theory, both by myself and the government, and determine which one is in line with the case law. I think it would be very, very problematic to adopt the government's reasoning, which just is both inconsistent with the case law and the Supreme Court case law and, of course, this court's, but also does not provide a theory or a rule for this court and law enforcement to apply in future cases. What is the line the government doesn't give them? The Supreme Court has, and we apply that line in these cases, and in this case, the dog that alerts to legal, non-controlled CBD falls on the wrong side of that line. Given the relative newness of the ubiquity of CBD, what's your argument in response to the good faith exception? Yeah, good faith does not apply here, and there's a few reasons for that. One is we are asking the court to apply the same law that's been in standing for a long time. Now, the CBD law has changed in the last four to five years, but law enforcement was well aware of those changes. They had to change – they certainly weren't going out and arresting people for possessing CBD. They knew that, and the officers in these cases and law enforcement more broadly knew that the dogs couldn't tell the difference between CBD and illegal drugs. So they had all of the relevant facts, and the law hasn't changed. We're simply asking the court to apply the same law. So there is no binding circuit precedent that controls the case, or – well, there is, but it requires our outcome. And that is why good faith doesn't apply. And on the good faith question, I'd refer the court to the Whitaker case. That was a case that found a canine sniff to be unreasonable and applied the good faith doctrine. And it was a case in which the canine was sniffing in a – excuse me, a hallway outside an apartment. And the court said, look, we haven't previously recognized an expectation of privacy in that hallway. We haven't previously recognized that this canine sniff would be unreasonable, but the application of the law to these facts compels that conclusion. And therefore, there's no case that authorizes it, and good faith doesn't apply. And in the same way, the government hasn't pointed to one case that would authorize it to use drug-sniffing canines that alert to legal, non-controlled substances. No binding circuit precedent on that issue. No good faith. And the final point on that would be in this case, I believe the underlying reasoning for the exclusionary rule is actually at its apex. These were institutional decisions. This was not an individual officer deciding to take his dog out under these circumstances. These were decisions by the La Crosse Police Department and Wisconsin law enforcement more broadly to ignore the changes in the law and to continue using them in violation of the reasonable interpretation of the law. And so when we're talking about intentional and institutional decisions, that's when the exclusionary rule is most justified, to deter conduct that otherwise law enforcement would have no incentive to change. Just to reserve the remainder of your time? Yes, thank you. Thank you, Mr. Velicites. We'll now move Mr. Anderson to you for argument on behalf of the government. Good morning, Your Honors. I am Robert Anderson. I have the privilege of representing the United States in this matter, U.S. v. Plancarte. First, let me correct one factual misstatement, which is repeatedly alleged by the appellant, and that is that the dog in this case, Loki, hits and had a record of hitting uncontrolled substances, on CBD. I pointed that out in my brief, that that was a misstatement of the record, and he continues to make the misstatement. If he would say that based on his expert's testimony at the evidentiary hearing, that Loki, like any other dog that's trained in marijuana, has a possibility of hitting on a CBD or a possibly legal substance, that would be more accurate. But he's representing to this court that Loki had a record, which he did not. Loki only, there's testimony from the handler at the hearing that Loki had never hit on a legal CBD product, and there's testimony from the investigators that were investigating this high drug area where the Plancarte car was stopped, that in all of the cars that they stopped with these suspicious circumstances that they saw, which led them to draw their attention to this car, they never found any legal CBD or THC products in any of those investigations. Plancarte is propounding what the magistrate called an extreme change in the law governing the use of trained drug dogs that defies logic and common sense. What he is seeking this court to rule, and what he wants this court to rule, is that contrary to Supreme Court authority, contrary to this circuit's precedent and all other circuits' precedent, a dog's exterior free air smell outside of an automobile, in a public place where the dog is lawfully with his handler, the officer, constitutes a search. His argument also seeks to implicitly try to change the probable cause standard, but from one of rather than a probability to a certainty of illegality of whatever substance that the dog is detecting. And that's inherently not what probable cause is. Merely accepting his hypothetical for the sake of the legal argument that he proposes here, it doesn't matter what was sniffed. But let's address first, before I go on to that, a couple of things that aren't disputed. There is no dispute that THC is an illegal controlled substance. Its possession is illegal, except in extremely limited circumstances, which he's arguing here, where you have an almost infinitesimal percentage amount in a product, which CBD may have, or what they've defined as hemp out of the marijuana definition since the federal Farm Bill of 2018. But that probability or possibility that something may be legal can be confirmed or dispelled during an investigation. There's also no dispute Loki was a qualified, well-experienced, reliable drug dog. The defendant's own expert confirmed this or concluded this and testified to this at the evidentiary hearing. There's no dispute, well, I guess he does, despite Loki's record of having hit on no CBD or hemp products, there is no dispute that a dog has a very sensitive sense of smell and can sense trace amounts, residual amounts of THC, and the defendant's expert established that. But most importantly, there is no dispute that no one, not a dog, not a human, can identify actually legal CBD products without taking those products and testing them to see if it does meet that minimal 0.3% or below THC content. And as I cited in my brief, there's evidence that even the CBD products that are out there are not uniform, are not quality consistent, and someone may believe that they even possess a legal CBD product, but it actually exceeds that 0.3% limit. The major point here, though, there are four points I want to make. The major point, whatever the defendant possesses, legal or illegal, that the dog is detecting, it was not subject to an illegal search because the defendant has no privacy right in the air particles outside of that car that was located on a public street in the public where they had a lawful right to be. This is not a home or a residence. We're subject to a higher expectation of privacy, like in Kylo, like in Jardim, like in this court's decision in the Whitaker case. When the dog smells the free air particles around the car, and for which the defendant doesn't have a privacy right, the dog signals, recognizes, it smells something that it recognizes, and it's plain dog smell as a substance, a controlled substance that he's been trained for. And under Florida v. Harrison, Bentley gives the police probable cause to search the car. Moving on, even under the law of Cabela's, the Cabela's decision, the dog is detecting what remains a controlled substance. The dog is detecting the THC, indicating a mere probability that there is an illegal substance, because this dog's trained in more than marijuana. The dog's trained in methamphetamine, cocaine, heroin. The dog's trained in other illegal substances that it has a probability of detecting. The dog is indicating a mere probability of an illegal substance, which THC still is, present where he smells it. Applying Cabela's, because there's a probability that the dog is detecting an illegal substance, it doesn't have to be a certainty that it's an illegal substance, and there's no right of privacy in an illegal substance under Cabela's, there is no right of privacy invaded. But when the police search, if there then is an item that perhaps fits a legal exception or a legal exemption, like if it's medical marijuana in a medical marijuana state, or a prescription medication, and the defendant has a prescription, or in Blancardi's case, if it's some legal CBD or hemp product, that's all subject to legitimate investigation and corroboration. The defendant provides proof of the prescription, or as in the case of legal CBD products, well, no one knows the actual legality of them, I guess, until it's tested, unless it's tested. Again, referring to that article about the quality and consistency of CBD. But as this court has held before in many cases, seizure of possibly innocent or innocuous items during an investigation, the police are justified in seizing what could be lawful objects when they are found in the context that justifies a suspicion of illegal activity. And finally, well, two more points. Moving on to the defendant's sort of major focus with the Kylo decision and the comparison of the dog to thermal imaging. A dog sniff outside of the car is not tantamount to a thermal imaging of a home and the privacy of a home. Kylo and the use of a sophisticated thermal imaging device there was primarily about the much greater sanctity of the privacy of the home. Jardine's, the dog sniff outside the curtilage of a home, was about, again, the heightened expectation of privacy of the home. And even this court's opinion in Whitaker, blending the application of Kylo and Jardine to an apartment hallway, the court stressed in that opinion that it was about the sanctity of the privacy of the home. And at page 853 of the opinion, the court said that that fact distinguished it from dog sniffs in the public, in public spaces. So the Whitaker opinion itself says Whitaker doesn't apply here. And then a couple of years later in the Lewis case, U.S. v. Lewis, which Judge Brennan was on that panel, it reaffirmed the limitations of the ruling in Whitaker and its non-applicability to, referenced the non-applicability to the sniff in public spaces. And let's prove the point here. To reverse, let's reverse the Kylo question. Can the appellant cite any cases holding that the use of thermal imaging in a public area, in a public situation, let's even say a car, let's make it specific to this, a car, has there ever been any case holding that use of a thermal imaging on a car in a public space is a violation of privacy? If not, and even if you accept or even if you somehow equate a dog to sniffing, a dog sniffing to thermal imaging, if a thermal imaging is not a violation of privacy in that situation, how can a dog sniffing the exterior of the car in that situation be a violation of privacy? No cases support the appellant's position or arguments, except for the Colorado McKnight case, which is based on Colorado law, not federal law, not the federal constitution. In contrast, all other courts, all other circuits, all other courts and district courts, to have considered this argument that Plancarde offers you, have rejected it. Specifically in the Tenth Circuit in Deluca, where they considered a dog sniffing, the argument that a dog could potentially be sniffing a legal object, the court ruled, as I just argued, that doesn't negate probable cause that it could have been an illegal control substance which police may investigate. And then finally, the good faith police here, the La Crosse Police Department, reasonably relied upon the existing unchanged, to this day existing unchanged, authority of the Supreme Court and this circuit, holding that a trained drug dog sniff is not a search and it provides them probable cause to search the vehicle. Therefore, the officers searched and they legitimately located the 11 pounds of methamphetamine, which were in the trunk, in good faith in this case. And the district court found, or said, that they employed Loki exactly in the manner allowed by this court's authority and the Supreme Court authority. I ask this court to affirm the decision and judgment of the court. Thank you, Mr. Anderson. We'll move back now, Mr. Felicities, to you for rebuttal. We'll give you two minutes. Thank you, Your Honor. A few brief points. First, THC is not a controlled substance. The government is incorrect about that. THC is a chemical that is contained in marijuana, which is illegal, and in hemp, CBD, and other things which are legal and not controlled substances. THC is not a controlled substance. Second, the officer in this case, the canine handler, testified that, and I'm looking at page 63 of the hearing transcript, that the odor of what comes off what's considered CBD plant material and the odor that comes off illegal marijuana substance material is the same, at least to a dog's nose and a human's nose. So the dog here could not tell the difference, and that's been acknowledged throughout the case, regardless of whether this dog, in fact, alerted. There was some evidence it did, but regardless, it can't tell the difference. Finally, Kylo is not the only case that establishes the standard we're applying here. In fact, it wasn't even the first case. The device not in general public use standard was explicated in the Supreme Court's earlier decision in Dow Chemical, and in that case, it was being applied not to a home but to an industrial complex that was acknowledged to have significantly lower privacy rights than a home. So this analysis is not limited to the home. It's not only applied in Kylo. It sets the standard, and again, that standard can be applied to semi-public type places as it was in Dow Chemical. Ultimately, this dog does reliably alert. It reliably alerts to a non-controlled legal substance. The government has provided no limiting principle that would prevent a dog who alerts to any other legal substance from being approved and not considered a search, and for that reason, the SNF… Counsel, we have a situation where we have illegal drugs and legal drugs. Is your position that if there's legal drugs that are detected, that that insulates the police from finding the illegal drugs? No, Your Honor, and I appreciate the question. What we're focused on is the capabilities of the dog or the technology, right? So it's not what is found. That's actually irrelevant to the search analysis as it is in any other case analyzing whether a search occurred. Rather, the question is does the dog alert only to controlled substances or drugs or does it alert to legal or non-controlled substances as well? So once the dog alerts, whatever they find in the car, wherever, it's not relevant to the search analysis. We're looking at just the capability, right? Because we have to know, police have to know in advance, before they perform the action, is it a search? And the dividing line the Supreme Court has created is a dog that alerts only to controlled substances. And the reason for that is we have a reasonable expectation of privacy in possessing legal items like CBD. So your concern is that there's going to be wholesale law enforcement stopping cars with legally possessing drugs? My concern is that— I mean we don't have a history of that, do we? My concern is that when—so the police can take this action with no cause whatsoever, right? Whenever they pull over a car on the highway, they can just bring the drug dog along as long as it doesn't delay the search. And so my concern is when people have legal private items in their car, the government shouldn't be collecting information about those legal items through this device. And we have a right not to do that. That's the reasonable expectation of privacy. And so whether or not the police are targeting people with CBD, I mean they could under the government standard, but we don't even have to get there. It's just the fact that they don't need any suspicion whatsoever to perform this action. And then when they're performing their action, they are collecting information about legal private activity that the government has no right to collect without probable cause. Well, but that's not our facts here though, right? I mean the police had some reasonable suspicion regarding this vehicle. They had suspicion of a window tint violation. Well, it's a violation. Correct. And we're not challenging the stop. The stop was legitimate. But the point is when the police undertake a search technique, we have to evaluate it on what we know prior to the search. So in Kylo, when police were scanning the home, they didn't ask well how often are we going to find a marijuana grow operation versus how often might the police discover someone in the shower, right? They have to analyze it prior to the search. What's the capability of the technology? And if the technology is capable of revealing rudimentary information indicating someone might be in the shower or I would say even more compellingly supplement that I possess to address a health need, then that's not information that the government gets to collect about me without probable cause. So every time you go down the highway and there's a radar gun and it catches a whole bunch of people going the speed limit, what's the difference there? I don't have a reasonable expectation of privacy that someone isn't going to look at my car and judge the speed. But the air outside is protected? The air—the private contents of the car are protected. And again, I would refer the court to the reasoning of cases like Kylo and the other dog sniff cases where, again, they were collecting air particles that are outside of the vehicle. But that's not decisive because what they're doing is they're collecting information about what's inside the vehicle. And if we have a reasonable expectation of privacy of what they're collecting information about, that's what triggers the Fourth Amendment protection. The canine sniff cases more broadly have said we don't even get there. It's not a search and not because they're not collecting any information. It's just that you, a person with drugs in your car, you don't have a reasonable expectation of privacy in controlled substances. And here that reasoning just doesn't apply because they are collecting information about things that I do have a reasonable expectation of privacy in, which is a legal, non-controlled health supplement. Thank you very much, Mr. Velicites. Thank you very much, Mr. Anderson, the case. We've taken our advisement.